Kenneth W. O’Habe, J.
The information in this matter charges that on June 21, 1973 the defendant Isadore Bosen & Sons, Inc., while in the course of construction of a 24-story building in Brooklyn, New York, did unlawfully violate and omit to comply with the provisions of 'Sections 23-1.7(a) (1) and 23-5.1 (i) of title 12 of the New York Codes Bules and Begulations (12 NYCBB 23-1.7 [a] [1], 23-5.1 [i]), and as implemented by sections 28, 29, 112, 200, 240 (subd. 1), 241 and 213 *329 of the Labor Law of the State of New York in failing to provide .suitable overhead protection on scaffolds which were exposed to falling material or objects, as a result of which one of its employees working on such a scaffold was fatally injured by a falling object.
The aforesaid section 23-1.7(a) (1) provides that “Every place where persons are required to work or pass that is normally exposed to falling materials or objects shall be provided with suitable overhead protection.” Section 23 — 5.1 (i) provides that 1 ‘ Overhead protection when required for any scaffold shall consist of planking not less than two inches thick full size, exterior grade plywood not less than three-quarter inches thick or material of equivalent strength. ’ ’
It was clearly established at the trial that on the date in question the defendant operated a masonry contracting business and was then engaged in masonry work on the final construction of a 24-story apartment building in Brooklyn at which time it was operating scaffolds at the exterior of the sixth floor of the building, with its employees working thereon and which scaffolds did not have any overhead protection, that one of its employees was .struck by some unidentified object and was fatally injured. The particular phase of the building operation at the time was the bricking-up of the hoist openings left at each floor after the building was closed in and roofed over. The method being used was to have the scaffolds work from the lower floors up, using materials stored for the workmen at each opening. The scaffolds were light or ‘ ‘ junior ’ ’ scaffolds, customarily used at final stages of construction when the roof is closed in and it apparently is not feasible or practicable to use a heavier type of scaffold secured to the frame of the building. It further appeared that defendant had never in its 25 years’ experience in the business received any violations for any such use, nor did the People’s witnesses know of any previous prosecution of anyone for use of light scaffolds, without overhead protection.
The important question is whether such scaffolds used under these particular circumstances were places ‘ ‘ normally exposed to falling materials or objects.” I find that they were. These men were working on exterior scaffolds at the sixth floor with hoist openings above them for 18 floors. At some or all of these openings, materials were piled up. The openings were protected against material falling or being pushed or swept out only by toe boards and cross bars at each floor. Other workmen had access to upper floors directly above the workmen on the *330 scaffolds. This was obviously an inherently dangerous situation that could have been avoided by either using out-rigger protection at each floor, or by using the procedure of closing the hoist openings by working from the top floor down. This the defendant did after the fatal accident, but not before because it was a more expensive and time-consuming method.
At the conclusion of the trial, the defendant moved to dismiss not only on the usual grounds of failure to prove guilt beyond a-reasonable doubt but on the further grounds that New York State’s occupational health and safety standards have been pre-empted by the Federal Occupational Safety and Health Act of 1970 (OSHA) which was approved December 29, 1970 and became effective April 28,1971.
I find no merit whatever in that contention.
Under the provisions of OSHA, the State of New York submitted an Occupational Safety and Health Plan which was duly approved by the Secretary of Labor on May 14,1973, and under this plan we are now within a three-year period of concurrent jurisdiction with the Federal Government during which time we may enforce our own laws and the Secretary of Labor may exercise Federal enforcement in such cases as he sees fit. The plan provides that the State has full authority to administer and enforce all laws, rules and orders protecting employee safety and health in all places of employment in the State. It does contain a developmental schedule which envisioned passage of enabling legislation in 1973, and this timetable has not been met, but that is not fatal to the plan. OSHA (U. S. Code, tit. 29, § 667, subd. [f]) provides that if the Secretary of Labor finds that there is a failure to comply substantially with any provision of a State plan or any assurances contained therein, he may take steps to terminate the plan but he has not done so in connection with New York’s plan and it remains in full force and effect.
The motion to dismiss is denied and the defendant is found guilty as charged.
The matter is set down for sentence before me at SP 2, Kings County on October 1,1974.