**Michael J. STARTZ, Plaintiff,**

v.

**TOM MARTIN CONSTRUCTION CO., INC., and Auto Auction, Inc., Defendants.**

**No. 93 C 0126.**

United States District Court, N.D. Illinois, E.D.

April 21, 1993.

**502**

Curt N. Rodin, Stephen Snow Phalen, Anesi, Ozmon & Rodin, Ltd., Chicago, IL, for plaintiff.

Corey Patrick O'Dell, James J. Desveaux, Law Offices of James J. Desveaux, Richard G. Howser, Richard Harvey Lehman, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Tom Martin Const. Co., Inc.

Richard G. Howser, Richard Harvey Lehman, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Arena Auto Auction Inc.

John R. Wienold, Craig D. Queen, John R. Weinold and Associates, Ltd., Aurora, IL, for Steelcon Corp. Inc.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on defendant's motion to dismiss Count I of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff, Michael J. Startz ("Startz"), a citizen of the State of Illinois, filed a two count personal injury action in circuit court against defendants, Tom Martin Construction Co., Inc. ("Martin Construction"), a Kansas corporation, and Arena Auto Auction Inc., a Delaware corporation. The defendants filed a notice of removal with the clerk of this Court. This suit arises from personal injuries allegedly suffered by Startz when he fell on an icy sheet roof at a construction project. Count I of Startz's complaint alleges violations of the Illinois Structural Work Act, Ill.Rev.Stat., ch. 48, paras. 60–69 ("Structural Work Act"). Count II alleges that defendants' negligent acts and/or omissions caused Startz to slip and fall, and thereby caused him to sustain severe and permanent injuries.

As alleged, on and before December 5, 1990, the defendants owned and/or were in charge of the erection, construction, repairs, alteration, removal and/or painting of a certain building or other structure located at Routes 53 and 55 in the Village of Bolingbrook in the State of Illinois. Startz was employed by Star Erectors on these premises in furtherance of this work. The defendants, individually and through their agents, servants and employees, were allegedly present during the course of such erection, construction, repairs, alteration, removal and/or painting and participated, *inter alia*, in coordinating the work being done and in the inspection of the work. Moreover, the defendants allegedly had the authority to stop the work, refuse the work, and order changes in the work in the event the work was being performed in a dangerous manner or for any other reason.

As set forth in Count I of the complaint, on December 5, 1990, Startz was required, as part of his duties and responsibilities, to work in the early morning hours on a slippery roof sheet being used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting. While working on the icy roof sheet, Startz slipped and fell, proximately causing him severe and permanent injuries as well as great pain and anguish. As alleged, the defendants wilfully violated the Structural Work Act in one or more of the following ways: (a) failed to erect a safe, suitable and proper temporary support for the protection of Startz and others like him; (b) failed to erect a safe, suitable and proper scaffold for the protection of Startz and others like him; and (c) required Startz to work on a slippery roof sheet in the early morning before the sun melted the ice.

In Count II of his complaint, Startz further alleges that each of the defendants had a duty to exercise reasonable care in the erection, construction, placement, or operation of the construction site, including the provision of a safe, suitable and proper roof sheet for Startz and the other workers. Notwithstanding their duty, defendants, by and through their agents, servants and employees, allegedly engaged in one or more careless and negligent acts and/or omissions,

which proximately caused Startz's slip and fall and subsequent injuries.

Defendant Martin Construction presently moves to dismiss Count I of Startz's complaint, which purports to state a claim under the Structural Work Act. In support of its present motion, Martin Construction argues that the Occupational Safety and Health Act of 1970, ("OSHA" or "OSH Act"), 29 U.S.C. § 651 *et seq.* (1985), preempts, and therefore makes unenforceable, the Illinois Structural Work Act in view of the Supreme Court's recent decision in *Gade v. National Solid Wastes Management Association*, —— U.S. ——, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). Startz, in turn, contends that OSHA does not preempt his claims for personal injuries under the Structural Work Act for a number of reasons including Congress' express preservation of his cause of action by virtue of OSHA's "savings" provision, 29 U.S.C. § 653(b)(4) (1985) ("Section 653(b)(4)").

In consideration of the parties' arguments and the pertinent case law, this Court agrees with Startz that Section 653(b)(4) of OSHA operates to save his claim for damages under the Structural Work Act, and we deny Martin Construction's motion to dismiss on this basis.[1]

### ANALYSIS

As recently articulated by the Supreme Court in *Gade*, pre-emption may be either expressed or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." —— U.S. at ——, 112 S.Ct. at 2383 (citations omitted). "Our ultimate task in any preemption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Id.*

With respect to OSHA, the Supreme Court stated, "The OSH Act as a whole evidences Congress' intent to avoid subjecting workers and employers to duplicative regulation; a State may develop an occupational safety and health program tailored to its own needs, but only if it is willing to completely displace the applicable federal regulations." *Id.* —— U.S. at ——, 112 S.Ct. at 2384. Accordingly, the Supreme Court concluded, "[l]ooking at the provisions of § 18 as a whole, we conclude that the OSH Act precludes any state regulation of an occupational safety or health issue with respect to which a federal standard has been established, unless a state plan has been submitted and approved pursuant to § 18(b)." *Id.* —— U.S. ——, 112 S.Ct. at 2385.

In reaching this conclusion, the Supreme Court first set forth the following overview of OSHA, which informs our present inquiry as well:

> In the OSH Act, Congress endeavored "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). To that end, Congress authorized the Secretary of Labor to set mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce, 29 U.S.C. § 651(b)(3), and thereby brought the Federal Government into a field that traditionally had been occupied by the States. *Federal regulation of the workplace was not intended to be all-encompassing, however. First, Congress expressly saved two areas from federal pre-emption. Section 4(b)(4) of the OSH Act states that the Act does not "supersede or in any manner affect any workmen's compensation law or ... enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). Section* 18(a) provides that the Act does not "prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue

---

1. We would note that because our resolution of the instant pre-emption issue rests on our assessment of OSHA's "savings" provision with respect to Startz's compensatory claims under Section 9 of the Structural Work Act, we need not reach the issue of whether OSHA preempts the Structural Work Act's remaining provisions setting forth substantive regulations regarding worker health and safety.

with respect to which no [federal] standard is in effect." 29 U.S.C. § 667(a).

Congress not only reserved certain areas to state regulation, but is also, in § 12(b) of the Act, gave the States the option of pre-empting federal regulation entirely. That section provides:

**"Submission of State plan for development and enforcement of State standards to preempt applicable Federal standards.**

Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a federal standard has been promulgated [by the Secretary under the OSH Act] shall submit a State plan for the development of such standards and their enforcement." 29 U.S.C. § 667(b).

About half the States have received the Secretary's approval for their own state plans as described in this provision. 29 CFR pts. 1952, 1956 (1991). Illinois is not among them.

—— U.S. at ——, 112 S.Ct. at 2382 (emphasis added).

Also pertinent to this Court's present determination is an assessment of the Illinois Structural Work Act. Adopted in 1907 for the protection and safety of persons working in or about areas of construction, the Structural Work Act enumerates specific regulations and standards regarding, *inter alia*, machinery, work platforms, safety rails on scaffolds, systems of communications, and erection of water pipes. Ill.Rev.Stat. ch. 48, paras. 60–68 (1986). As stated in its preamble and recognized by courts, the Structural Work Act limits its concerns to a certain class of persons engaged in work activities of a particularly hazardous nature "in or about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures." *See Simmons v. Union Electric Company,* 104 Ill.2d 444, 85 Ill.Dec. 347, 354, 473 N.E.2d 946, 953 (1984); *Halberstadt v. Harris Trust and Savings Bank,* 55 Ill.2d 121, 302 N.E.2d 64, 67 (1973).

The Structural Work Act also creates a civil cause of action for injuries or death caused by a willful violation of the Act. Section 9 of the Act provides:

Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provision of this act, shall comply with all the terms thereof. . . .

\*   \*   \*   \*   \*   \*

For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured. . . .

Ill.Rev.Stat. ch. 48, par. 69 (1986); *see Simmons,* 85 Ill.Dec. at 350, 473 N.E.2d at 949.

The Illinois Supreme Court's *Simmons* ruling sheds light upon the purpose and distinguishing characteristics of the Structural Work Act:

It has been determined that the Structural Work Act protects work activities of a particularly hazardous nature and is designed to lessen the extent of the danger. [citations omitted]. To effectuate this purpose a liberal construction has been adopted [citation omitted] in order to afford "broad protection to working men." [citations omitted]. This statute is dissimilar to a common law remedy designed to compensate an injured party for the damage he has suffered because of the negligence of another and even to the protection afforded under the common law products liability doctrine, which is designed to compensate consumers injured by unsafe products. The purpose of this safety statute . . . "is to prevent accidents before they occur; failing that, to compensate those injured by extrahazardous but socially useful activities." [citations omitted].

85 Ill.Dec. at 354, 473 N.E.2d at 953.

Keeping in mind the foregoing overviews of OSHA and the Illinois Structural Work Act, we turn to the issue at the heart of the present motion to dismiss—whether OSHA preempts Startz's claim for damages under the Structural Work Act. In contention is

the appropriate interpretation of OSHA's "savings" provision, which states as follows:

> Nothing in [OSHA] shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

29 U.S.C. § 653(b)(4). Martin Construction, arguing for preemption, asserts that Section 653(b)(4) only applies to workmen's compensation acts or rights derived at common law as they relate to the rights and duties of employers and employees. Startz counters that this section does not limit itself to claims of employees *against* their employers; rather, it encompasses the rights of employees under *any* law relating to injuries, diseases or death arising out of employment, including the Structural Work Act. In consideration of the parties' arguments and the relevant case law,[2] we conclude that Startz's right of recovery under the Structural Work Act falls within the "savings" provision of Section 653(b)(4) and, therefore, is not preempted by OSHA.

One reason we find for Startz is that the case law directly refutes Martin Construction's argument that Section 653(b)(4) is only applicable to state workmen's compensation acts. There exists a solid consensus among the courts, including the Seventh Circuit, that Section 653(b)(4) is a broad savings clause encompassing state tort claims.[3] As stated by the Seventh Circuit in *National Solid Wastes Management Ass'n,* the case which the Supreme Court affirmed on appeal in *Gade:* "To date, all but one court that has considered the question of section 18's preemptive effect upon state criminal and *tort rules* has concluded that section 18 does *not* preempt such laws." *National Solid Wastes Management Assn. v. Killian,* 918 F.2d 671, 680 n. 9 (7th Cir.1990) (emphasis added). One of the many cases cited by the Seventh Circuit in support of this proposition was *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857 (9th Cir.1987), cert den., 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), in which the Ninth Circuit held that plaintiffs' wrongful discharge claims were not preempted by state's federally approved OSHA plan because the employees sued under state statutes only. Also cited in support was *McElroy v. SOS Int'l, Inc.,* 730 F.Supp. 803, 809 (N.D.Ill.1989), holding that "OSHA in no way preempts [plaintiff's] state causes of action." The Court of Appeals for the District of Columbia Circuit reached a comparable conclusion:

> The question remains, then, what does Section 4(b)(4) mean.... We see two plausible meanings. First, as courts have already held, Section 4(b)(4) bars workers from asserting a private cause of action against employers under OSHA standards. [citations omitted]. Second, when a worker actually asserts a claim under workmen's compensation law *or some other state law,* Section 4(b)(4) intends that neither the worker nor the party against whom the claim is made can assert that any OSHA regulation or the OSH Act itself preempts any element of the state law.

*United Steelworkers of America, etc. v. Marshall,* 647 F.2d 1189, 1235 (D.C.Cir.1980), cert den., 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). *See also Pedraza,* 942 F.2d at 52–53; *Frohlick Crane Srv., Inc. v. Occupational Safety and Health Review Comm'n,* 521 F.2d 628, 631 (10th Cir.1975) ("It would appear that by this particular provision Congress simply intended to preserve the existing private rights of an injured employee.");

---

**2.** The *Gade* case addressed the preemptive effect of OSHA with respect to State of Illinois licensing acts and, therefore, had no occasion to address Section 653(b)(4) as it relates to tort claims under state law. —— U.S. at ——, 112 S.Ct. at 2381. Because the Supreme Court's *Gade* ruling has little bearing on the precise issue before us, namely, the scope of Section 653(b)(4), we have considered other courts' treatment of this issue, which we have found highly instructive.

**3.** While Martin Construction relies greatly upon First Circuit's holding in *Pratico v. Portland Terminal Co.,* 783 F.2d 255, 266 (1st Cir.1985), this decision does not address the issue presently before us; rather, *Pratico* was concerned with how OSHA affects tort actions, not with whether OSHA preempts state tort law. *Pedraza,* 942 F.2d at 52. *See Pedraza v. Shell Oil Co.,* 942 F.2d 48, 52 (1st Cir.1991), cert den., —— U.S. ——, 112 S.Ct. 993, 117 L.Ed.2d 154 (1992).

*People v. Chicago Magnet Wire Corp.*, 126 Ill.2d 356, 128 Ill.Dec. 517, 525, 534 N.E.2d 962, 968 (1989) ("Congress expressly stated that OSHA was not intended to preempt two bases of liability that, like criminal law, operate to regulate workplace conduct and simplicity set safety standards—State worker's compensation and tort law."); *see generally,* Note, *The Extent of OSHA Preemption of State Hazard Reporting Requirements,* 88 Colum.L.Rev. 630, 641 (1988) (Section 653(4)(b) reveals "Congress' explicit recognition of the continued validity of state worker compensation and tort remedies....").[4]

Moreover, we find no support for Martin Construction's alternative argument that Section 653(b)(4) applies only to rights of recovery derived at common law, not to comparable rights derived by statutes such as the Structural Work Act. The plain language of the section disputes this contention: "Nothing in [OSHA] shall be construed ... to enlarge or diminish or affect in any other manner the common law *or statutory rights,* duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment." 29 U.S.C. § 653(b)(4) (emphasis added); *see Pedraza,* 942 F.2d at 53–54 (quoting, *Atlas Roofing Co. v. Occupational Safety Comm'n,* 430 U.S. 442, 445, 97 S.Ct. 1261, 1264, 51 L.Ed.2d 464 (1976) (stating with respect to the new remedies under OSHA, "... existing state statutory and common-law remedies for actual injury and death remain unaffected") (dictum)).

Martin Construction lastly contends that Section 653(b)(4) only exempts those claims brought by employees against their employers, thereby preempting Startz's claims against the two defendants in this suit with whom Startz does not allege an employer-employee relationship. Martin Construction, however, provides no case law in support of this proposition nor offers any sound basis

for this position. In a decision directly on point, the First Circuit held that OSHA did not pre-empt the plaintiff's state tort claims against a party who was not his employer, a conclusion reached, in part, in reliance upon the court's analysis of OSHA's "savings clause" embodied in Section 653(b)(4). *Pedraza,* 942 F.2d at 53–54. The *Pedraza* court stated:

> Having seen no reason to preempt existing state law rights and remedies between employer and employee—the principal participants in the workplace, and the *only* parties whose relationship is regulated by OSHA [citations omitted]—Congress almost certainly did not intend to preempt, *sub silentio,* the right of an employee to bring an action for damages against a third-party supplier of products used in the workplace.

*Id.* at 53 n. 6 (emphasis in original).

Therefore, in light of the case law's clear consensus that Section 653(b)(4) operates to save state common law and statutory tort claims from pre-emption under OSHA, we agree with Startz that Congress has expressly preserved his right of recovery under the Structural Work Act by virtue of OSHA's "savings" provision. Having thus determined that Startz's claim under the Structural Work Act is not preempted by OSHA, we find that no basis exists for granting Martin Construction's motion to dismiss and we deny it accordingly.

### CONCLUSION

For the foregoing reasons, Martin Construction's motion to dismiss Count I of Startz's complaint is denied.

---

4. Further guidance is provided by *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443 (1984), in which the Supreme Court held that the Atomic Energy Act, 42 U.S.C. § 2011 *et seq.,* did not pre-empt state claims for *compensatory and punitive damages,* stating: "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." The Supreme Court ruled likewise in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2619, 120 L.Ed.2d 407 (1992), when it held that the 1965 pre-emption provision of the Federal Cigarette Labeling and Advertising Act did not pre-empt state law damages actions.