Walter VUKADINOVICH, Plaintiff,

v.

TERMINAL 5 VENTURE, a/k/a T5V, Gilbane Building Company, Individually and d/b/a Terminal 5 Venture, Concrete Structures of the Midwest, Inc., Castle Construction Corporation, Havens Steel Company and Monroe Timmons Construction, Inc., Defendants.

HAVENS STEEL COMPANY and Terminal 5 Venture a/k/a T5V and Gilbane Building Company, Individually and d/b/a Terminal 5 Venture, Third–Party Plaintiffs,

v.

DELGADO STEEL ERECTORS, INC., Third–Party Defendant.

No. 91 C 8308.

United States District Court, N.D. Illinois, E.D.

Sept. 22, 1993.

Louis C. Cairo, Goldberg, Weisman and Cairo, Ltd., Chicago, IL, for plaintiff.

John Joseph Bullaro, Thomas A. Carton, Bullaro, Carton & Stone, Chicago, IL, for defendants Terminal 5 Venture aka T5V, Havens Steel Co. and Gilbane Building Co.

John Joseph Freeman, Adler, Kaplan & Begy, Chicago, IL, for defendant Concrete Structures, Inc.

Kurt C. Meihofer, Laura B. Glaser, Johnson & Bell, Ltd., Chicago, IL, for defendant Castle Const. Corp.

Harry L. Wilson, Ilene M. Korey, Clausen, Miller, Gorman, Coffrey & Witous, P.C., Chicago, IL, for third-party defendant Delgado Erectors.

## *MEMORANDUM OPINION AND ORDER*

MAROVICH, District Judge.

■ Plaintiff Walter Vukadinovich ("Vukadinovich") filed suit against Defendants Terminal Five Venture ("T5V"), Gilbane Building Company ("Gilbane"), Concrete Structures of the Midwest, Inc. ("CSM"), Castle Construction Corporation ("Castle"), Havens Steel ("Havens") and Monroe Timmons Construction, Inc. ("Timmons") (collectively "Defendants") seeking to recover for injuries he suffered when he fell through a hole in a building structure at O'Hare International Airport in Chicago. Havens, T5V, and Gilbane then filed suit as third party plaintiffs against third party defendant Delgado Steel ("Delgado"). Vukadinovich brings claims under both common law negligence and The Illinois Structural Work Act, 740 ILCS 150/1–150/9 (West 1993). Defendants have collectively moved for judgment on the pleadings[1] pursuant to Fed.R.Civ.P. 12(c) alleging that the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 (1985) preempts the Illinois Structural Work Act claims. For the following reasons, we hold that the Illinois Structural Work Act claims are not preempted by OSHA because they fall within OSHA's "savings clause."

### *BACKGROUND*

Terminal Five Venture is the construction manager for the new International Terminal at O'Hare International Airport in Chicago. Gilbane Building Company is one of five joint venture partners of the Terminal Five Venture. Havens Steel contracted with T5V to fabricate and erect steel for the International Terminal. Delgado subcontracted with T5V to erect structural steel. Vukadinovich was employed by Delgado.

T5V, Havens and other defendants were "in charge of" the work at Terminal Five

---

1. Plaintiff asserts that Defendants' motion is not actually a motion for judgment on the pleadings since Plaintiff alleges in his Complaint the existence of a cause of action predicated on the Act, and Defendants have answered by admitting the existence of the Structural Work Act but denying that they have violated the Act. However, such admissions do not prevent the Defendants from raising the affirmative defense of the Structural Work Act and seeking judgment on the pleadings. *See Blonder–Tongue Laboratories, Inc. v. Univ. of Illinois Foundation,* 402 U.S. 313, 348, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971) ("[A]n estoppel defense ... can be pleaded affirmatively and determined on a pretrial motion for judgment on the pleadings or summary judgment.")

pursuant to the meaning of that phrase as used within the Illinois Structural Work Act. Vukadinovich participated in coordinating the work being done and designated various work methods, maintained and checked work progress, and participated in the scheduling and inspection of the work.

On December 20, 1991 a certain concrete floor deck existed which had a hole within it. Vukadinovich was in the process of acquiring plywood for purposes of building a temporary deck to be used in the constructing process when he picked up a piece of plywood which was positioned over a hole and fell through the space. He landed approximately twenty-five feet below and suffered severe injuries.

Plaintiff alleges that Defendants:

(a) Failed to install, or cause to be installed, a safe or adequate covering over said hole;

(b) Failed to install, or cause to be installed, barricades, saw horses, guardrails or other forms of protective devices over or around said hole;

(c) Failed to install, or cause to be installed, any warning signs or warning indicators around or over said hole;

(d) Failed to warn Plaintiff of the fact that a hole existed in said concrete deck;

(e) Caused a piece of plywood to be laid over said hole in the concrete deck without putting any form of warning or other protective device on top of or around said piece of plywood to indicate that a hole existed underneath same.

Vukadinovich bases his claims on both the Illinois Structural Work Act and the common law.

### DISCUSSION

#### A. Preemption

The Supremacy Clause of the United States Constitution allows for federal law to preempt state laws in various ways. Express preemption occurs when Congress expressly states that federal law will preempt state regulations. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Preemption can also be implied in the absence of express language if the federal regulation is so comprehensive

that no state regulation can supplement it. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). This type of preemption is referred to as field preemption.

In contrast, implied conflict preemption exists when the scheme of federal regulation has not completely displaced state regulation and that state regulation conflicts to a certain extent with federal law. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). The court's "ultimate task in any preemption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Gade v. National Solid Wastes Management Assn.*, — U.S. ——, ——, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992).

In order to examine the preemption argument, it is therefore essential that we examine the two acts to determine what conflicts, if any, exist. We also must delve into the purposes behind the statutes in order to ascertain the intent of Congress which is critical to our determination. *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

#### 1. The Illinois Structural Work Act

The Illinois Structural Work Act was first adopted in 1907 in order to protect persons working in certain types of construction projects. *See Simmons v. Union Electric Company*, 104 Ill.2d 444, 85 Ill.Dec. 347, 473 N.E.2d 946 (1984). The Act applies to various work activities "in or about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures." *Id.* The Act provides in relevant part:

That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erecting, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a

safe, suitable and proper manner, and shall be so erected and constructed, placed and operated, so as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.

740 ILCS 150/1 (West 1993). The Illinois Supreme Court has stated that the purpose of the Illinois Structural Work Act is to "prevent accidents before they occur; failing that, to compensate those injured by extrahazardous but socially useful activities." *Simmons*, 85 Ill.Dec. at 354, 473 N.E.2d at 953, *citing Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121, 302 N.E.2d 64 (App.Ct.1973).

██ The Structural Work Act claims vary from the common law negligence claims in that judicial interpretation of the Act excludes the injured party's own negligence from the negligence equation. *Stifle v. Marathon Petroleum Co.*, 876 F.2d 552 (7th Cir. 1989). This is in keeping with the Act's purpose which is to afford an employee a safe and healthy workplace and to give complete relief to an injured worker. *Id.* Courts also interpret the language of "having charge of" broadly in order to include any owner, contractor, subcontractor, foreman or one may actually be in charge of work at the site in order to insure compliance with the Act. *Schroeder v. C.F. Braun & Co.*, 502 F.2d 235 (7th Cir.1974).

### 2. *Occupational Health & Safety Act*

Traditionally, the states had occupied the field of safe and healthy working environments. However, through OSHA, Congress attempted to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Pursuant to OSHA, mandatory occupational safety and health standards were established which applied to all businesses affecting interstate commerce. 29 U.S.C. § 651(b)(3). Congress, however, expressly preserved two areas from federal preemption. Section 18(a) further provides:

that the Act does not "prevent any State agency or court from asserting jurisdiction under state law over any occupational safety or health issue with respect to which no [federal] standard is in effect."

Congress further provided that states could preempt federal legislation entirely. Section 18(b) provides:

Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a federal standard has been promulgated [by the Secretary under OSHA] shall submit a State plan for the development of such standards and their enforcement.

It is the effect of these sections which is at the crux of the dispute before us. Illinois has not received the Secretary's approval for the Illinois Structural Work Act and therefore, Defendants assert that since that Act covers the same issues of health and safety that OSHA covers, Plaintiff's claims under that Act are unenforceable.

### B. *Analysis*

Defendants assert that the Illinois Structural Work Act regulates many, if not most, of the areas that OSHA regulates and therefore the federal legislation preempts the state legislation making Vukadinovich's claims unenforceable. In support of their assertion, Defendants rely significantly upon the recent Supreme Court decision in *Gade v. National Solid Wastes Management Assn.*, —— U.S. ——, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).

In *Gade*, the Supreme Court addressed the preemptive nature of OSHA in the context of two Illinois acts which required the licensing of workers at certain hazardous waste facilities. Each act had dual purposes: to protect the public and workers and to require specified training and examinations for hazardous waste workers. The Respondent in *Gade* was the National Solid Waste Management Association ("NSWA"), a group of businesses that remove, transport, dispose of and handle waste material including hazardous waste. Asserting that OSHA preempts both licens-

ing acts, NSWA sought injunctive relief against the Illinois Environmental Protection Agency from enforcing the acts.

The Court held in *Gade* that the Illinois Hazardous Waste Crane and Hoisting Equipment Operators Licensing Act and the Illinois Hazardous Waste Laborers Licensing Act were preempted by OSHA. Finding that the state purpose of the licensing acts was to protect workers and the general public, the Court ruled that OSHA precludes any state regulation of an occupational safety or health issue on which a federal standard has been submitted, unless: 1) the particular state has submitted a plan to the United States Secretary of Labor; and 2) the plan has been approved by the Secretary of Labor pursuant to § 18(b) of OSHA. *Id.* The Illinois plan had not yet been approved by the Secretary of Labor.

Prior to *Gade*, three Courts of Appeals had given OSHA a much narrower preemptive effect when addressing the type of "dual impact" state regulations that we have before us. *See Associated Industries of Massachusetts v. Snow*, 898 F.2d 274, 279 (1st Cir.1990) (Massachusetts regulations governing asbestos workers not preempted by OSHA); *Environmental Encapsulating Corp. v. New York*, 855 F.2d 48, 57 (2d Cir.1988) (City must demonstrate primary separate purpose for local regulation of asbestos removal to avoid preemption); *Manufacturers Assn. of Tri–County v. Knepper*, 801 F.2d 130, 138 (3rd Cir.1986) (severing sections of the Pennsylvania Worker and Community Right to Know Act into that which is preempted and that which is not). Taking into account the varying ways in which the circuits have addressed OSHA and preemption, the Court in *Gade* concluded:

> a state law requirement that directly, substantially, and specifically regulates occupational safety and health is an occupational safety and health standard within the meaning of the Act. That such a law may also have a nonoccupational impact does not render it any less of an occupational standard for purposes of preemption analysis.

*Gade* —— U.S. at ——, 112 S.Ct. at 2388.

In light of the Court's mandate in *Gade*, Defendants seek to attach the same preemptive effect to the Illinois Structural Work Act. Defendants assert that the savings clause within section 18 is limited solely to worker's compensations claims and therefore does not "save" Vukadinovich's claims. Their interpretation, however, fails to take into account the established case law which permits state tort law claims to fit neatly within the OSHA "savings clause", the purpose of the Illinois Structural Work Act and the unique relief afforded thereunder which differentiates it significantly from the federal legislation.

First, a review of pertinent case law reflects a broad interpretation of the OSHA savings clause contained in Section 18. *See, e.g., Pedraza v. Shell Oil Co.*, 942 F.2d 48, 53 (1st Cir.1991) (right of employee to bring action for damages against third-party supplier of products used in workplace not preempted by OSHA); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988) (state wrongful discharge claims not preempted by OSHA); *People v. Chicago Magnet Wire Corp.*, 126 Ill.2d 356, 128 Ill.Dec. 517, 534 N.E.2d 962 (1989) (state criminal law which covered conduct regulated by OSHA does not preempt OSHA).

The similarity in these holdings is that each court preserved a private right of action for a Plaintiff in an employee/employer setting which was governed by OSHA in certain respects. The common thread between the opinions is the court's belief that certain remedies are preserved under OSHA's savings clause because they do not necessarily conflict with the mandates of OSHA, but rather, supplement the relief a Plaintiff can receive. The courts have generally found that state tort causes of action fit neatly with the savings clause and are therefore not preempted.

Recently, Judge Kocoras addressed OSHA preemption and the Illinois Structural Work Act and held that OSHA does not preempt the Act because the Act fits within the "savings clause" provision. *Startz v. Tom Martin Construction Co.*, 823 F.Supp. 501

(N.D.Ill.1993). In so holding, Judge Kocoras stated:

> There exists a solid consensus among courts, including the Seventh Circuit, that Section 653(b)(4) is a broad savings clause encompassing state tort claims. As stated by the Seventh Circuit in National Solid Wastes Management Assn, the case which the Supreme Court affirmed on appeal in Gade: "To date, all but one court has considered the question of section 18's preemptive effect upon state criminal and tort rules has concluded that section 18 does not preempt such laws."

*Id.* at 505 (cites omitted).

Defendants assert, however, that these cases, as relied on by Judge Kocoras, fail to support the broad interpretation of the savings clause because the underlying laws which were not preempted were general areas of law as opposed to the specific regulations contained within the Illinois Structural Work Act.

We find that Defendants' argument fails upon closer examination. Although the areas of law may have been general in nature, such as criminal or employment, the claims which were found not to be preempted were specific enough to be in conflict with OSHA. For example, the criminal law in *Chicago Magnet* which was held not to be preempted, covered conduct which OSHA also encompassed. This did not automatically equate to a finding of preemption. Instead, the Illinois Court of Appeals preserved the state law claims in order to afford the plaintiff the proper and necessary relief. Attempting to differentiate these general areas of law from the more specific results in an exercise of splitting hairs and fails to address the intent of Congress in enacting these pieces of legislation.

■ The language in the statute is explicit and direct. Section 4(b)(4) states:

> [OSHA] does not supersede or in any manner affect any workmen's compensation law or ... enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

Certainly, the Illinois Structural Work Act can be described as a set of statutory rights, duties and liabilities of employers and employees with respect to the injuries and death of employees. The Supreme Court's holding in *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (1984) demonstrates the types of claims which would not be preempted under this savings clause.

■ In *Silkwood*, the Court held that the Atomic Energy Act, 42 U.S.C. § 2011 did not preempt state claims for compensatory and punitive damages. The Court held: "[I]t is difficult to believe that Congress, would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Id.* The purposes of the Illinois Structural Work Act were twofold: to afford a safe workplace to employees in certain work situations, and to afford relief to workers who were injured as a result of unsafe conditions. The Act was not designed to limit worker relief, but rather, to assure certain safeguards and afford certain relief for workers injured as a result of noncompliance with the Act. This purpose is in keeping with the Court's holding in *Silkwood* and is not discordant with the holding in *Gade*.

The Court in *Silkwood* recognized that there may be tension between the Atomic Energy Act and the private causes of actions but noted that the conflict was not sufficient to constitute preemption:

> No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based upon the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but

that regulatory consequence was something that Congress was quite willing to accept. *Silkwood,* 464 U.S. 238 at 256, 104 S.Ct. at 625. Similarly, when OSHA and the Illinois Structural Work Act are juxtaposed, there may be tension, but that tension has been expressly allowed for in the savings clause in regard to regulation of employee/employer claims for injuries. 29 U.S.C. § 653(b)(4).

In contrast, *Gade* dealt specifically with the hazardous waste industry and certain licensing acts which were designed to assure a level of competency and safety for hazardous waste handlers. Congress has specifically entered the field of hazardous waste and has regulated nearly all aspects of that field from manufacturing to supplying. *See, e.g., Ohio Mfrs' Asso. v. Akron,* 801 F.2d 824 (6th Cir.1986) (statute which governed labeling of hazardous substances in workplace preempted); *United Steelworkers of America, etc. v. Pendergrass,* 819 F.2d 1263 (3d Cir.1987) (statute requiring employer disclosure of hazardous substances preempted); *Manufacturers Asso. of Tri–County v. Knepper,* 801 F.2d 130 (3rd Cir.1986) (statute requiring employers to post a listing of hazardous substances preempted).

Congress has not attempted to limit relief, such as the kind of relief afforded to a Plaintiff under the Illinois Structural Work Act; the savings clause may operate to preserve such claims. As the Second Circuit has stated: "there is a solid consensus that § 4(b)(4) operates to save tort rules from preemption." *Pedraza,* 942 F.2d 48 at 53. The Structural Work Act does not thwart the goals of OSHA. The savings clause evidences Congress' intent to preserve certain private rights of recovery for personal injury. In fact, preserving these traditional remedies is perfectly in keeping with the basic pronouncement in OSHA: "to provide for the general welfare, to assure so far as possible every workingman and woman in the Nation safe and healthful working conditions and to preserve human resources...." 29 U.S.C. § 651(b).

Therefore, we conclude that OSHA does not preempt the Illinois Structural Work Act and Vukadinovich may continue to present those claims in this case. Defendants' Motion for Judgment on the Pleadings is denied.