DENISE LEE DAVIS, Plaintiff, v. STATES DRYWALL AND PAINTING *et al.*, Defendants (Portrait Homes-Chicago, Inc., *et al.*, Defendants and Counterplaintiffs-Appellees; States Drywall and Painting, Defendant and Counterdefendant-Appellant.)

First District (6th Division)   No. 1—93—2069

Opinion filed December 9, 1994.—Rehearing denied January 13, 1995.

Sandra Young, John P. O'Malley, and D. Timothy McVey, all of Purcell & Wardrope, Chartered, of Chicago, for appellant.

John D. Daniels and Robert T. Varney, both of Sanchez & Daniels, and David A. Beck, of Orner & Wasserman, Ltd., both of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

This case concerns the contribution claims which remain after the joint settlement of a personal injury action. The principal issue is whether Illinois' Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, par. 59.90 et seq.) has been preempted by the Federal Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq. (1988)).

On September 22, 1987, Denise Lee Davis filed a complaint against Portrait Homes-Chicago, a joint venture between Portrait Homes-Chicago, Inc., and L.I.C.-2, Inc.; Portrait Homes-Chicago, Inc., individually; L.I.C.-2, Inc., individually (collectively referred to as Portrait Homes), and States Drywall & Painting. On January 17, 1989, Portrait Homes filed a counterclaim for contribution against States Drywall. Davis subsequently filed a first amended complaint at law, adding Pasquinelli Construction Company as a defendant. She later filed a second amended complaint, adding various Pasquinelli enterprises as defendants. In her single-count complaint, Davis alleged violations of the Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, par. 59.90 et seq.) against all defendants. On March 31, 1992, States Drywall filed a counterclaim for contribution against Portrait Homes, while on December 2, 1992, Pasquinelli filed a counterclaim for contribution against States Drywall.

On January 6, 1993, the case proceeded to a jury trial. Davis testified that on March 18, 1987, she was working as a drywall taper finisher at a residential construction project in Lake Zurich, Illinois. On that date, she sustained injuries to her right ankle when she fell approximately four feet through an opening in the floor that had been covered with a piece of drywall. The incident occurred in a

closet at one of the new homes under construction. Throughout the trial, Portrait Homes was referred to as the developer, while Pasquinelli was referred to as the owner. Portrait Homes had a contract with States Drywall to provide drywall services. States Drywall in turn retained D&G Drywall, of which Davis was a principal, to perform taping work.

On January 11, a recess was taken for the purpose of conducting settlement discussions. The parties met in chambers, outside the presence of the jury. Although a settlement agreement had not yet been signed, counsel for Pasquinelli represented to the court that Portrait Homes and Pasquinelli jointly offered Davis $650,000 in settlement of her entire case which she accepted in exchange for the release of the defendants in the case, including States Drywall. Counsel further represented that funding for the offer was provided by the Northbrook Insurance Company, the insurance carrier for both Portrait Homes and Pasquinelli. He stated that although the offer was being made solely on behalf of the Northbrook insureds, since it was unfunded by States Drywall or its carrier, it was made with the intention that a release would be obtained for all defendants so that pursuant to the Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1991, ch. 70, par. 301 *et seq.*) further proceedings could be had regarding the allocation of responsibility. Pasquinelli then asked the trial court for a finding that the joint settlement was made in good faith, a prerequisite to proceeding under the Contribution Act. States Drywall objected to the request on the basis that there had been no representation to the court as to the allocation of the settlement amount between the two settling defendants. Counsel for Pasquinelli countered that he was unsure whether it was necessary to present evidence of the allocation, while counsel for Portrait Homes did not think it mattered how the settlement was split.

The trial court ruled that the settlement of $650,000 was reasonable and made in good faith. The court entered an order pursuant to the settlement agreement between Davis and Portrait Homes and Pasquinelli, dismissing with prejudice Davis' action as to all defendants, including States Drywall, without costs to any party.

The trial judge informed the jury that Davis' case against defendants had been dismissed because it had been settled. He further stated that all that remained for purposes of the trial were Portrait Homes' and Pasquinelli's counterclaims for contribution against States Drywall.

At the close of the contribution plaintiffs' cases in chief, States Drywall moved for a directed verdict on several grounds. The two grounds relevant to this appeal are as follows: (1) that Illinois'

Structural Work Act had been preempted by the Federal Occupational Safety and Health Act of 1970; and (2) that the contribution plaintiffs had not presented a *prima facie* case for contribution, having failed to produce sufficient evidence as to the allocation of the joint settlement between them. The trial court denied States Drywall's motion for a directed verdict.

Thereafter, during the jury instruction conference after the parties had rested their cases, counsel for Pasquinelli, on behalf of both contribution plaintiffs, informed the trial court that they now agreed with States Drywall that in order to establish a *prima facie* case of contribution, they were obligated to allocate the settlement amount between them. The contribution plaintiffs then asked the court to reopen their cases for the purpose of placing on the record their allocation of the settlement and the circumstances surrounding the allocation. Overruling States Drywall's objection, the trial court allowed the contribution plaintiffs to reopen their cases.

Counsel for Pasquinelli informed the court that he had obtained an agreement from Davis' counsel allowing contribution plaintiffs to allocate the settlement amount any way they saw fit. Counsel for Pasquinelli further stated that the allocation agreed upon was 50% or $325,000 as to both Portrait Homes and Pasquinelli. Over States Drywall's objection, the court found that the allocation was complete and reasonable under the circumstances. The trial court informed the parties that the question of good faith and the amount of the settlement would not go to the jury.

On that same date, the jury returned a verdict apportioning fault as follows: Portrait Homes, 38%; Pasquinelli, 34%; and States Drywall, 28%. The trial court entered judgment in favor of Portrait Homes and Pasquinelli and against States Drywall in the amounts of $78,000 and $104,000, respectively, on their claims for contribution. The court denied States Drywall's post-trial motions, and States Drywall appeals.

On appeal, States Drywall contends that the Federal Occupational Safety and Health Act of 1970 (hereinafter OSHA) preempts Illinois' Structural Work Act where OSHA's section 653(b)(4), the employer/employee savings clause, has no application to the Structural Work Act such that no cause of action exists against it; and that, in the alternative, if such an action does exist, the trial court committed reversible error when it denied States Drywall's motion for a directed verdict at the close of plaintiffs' cases in chief, where they failed to state a *prima facie* case for contribution; and that the court abused its discretion when it allowed them to reopen their cases to supply the essential elements they had refused to introduce into evidence earlier.

States Drywall first contends that OSHA has preempted the Structural Work Act. Such preemption, it maintains, is predicated upon congressional intent, the United States Supreme Court's interpretation of OSHA in *Gade v. National Solid Wastes Management Association* (1992), 505 U.S. 88, 120 L. Ed. 2d 73, 112 S. Ct. 2374, and the inapplicability of OSHA's employer/employee savings clause. 29 U.S.C. § 653(b)(4) (1988).

States Drywall asserts that in enacting OSHA, Congress demonstrated its intent to regulate all aspects of occupational safety and health issues, thus precluding State regulation of such issues and effectively preempting the Structural Work Act. Recognizing, however, that Congress established an explicit framework in OSHA allowing for the State regulation of occupational safety and health issues in certain limited situations, States Drywall argues that because it is undisputed that OSHA regulations are in effect and applicable to the Davis incident, State regulation pursuant to section 667(a) has no application to this case.

Moreover, it points out that in *Gade*, the Supreme Court held that all nonapproved State regulation of occupational safety and health issues, for which there is a Federal standard in effect, is preempted as being inconsistent with congressional intent based on its enactment of OSHA. Therefore, acknowledging that the Structural Work Act embodies Illinois' regulation of occupational safety and health issues in the construction industry, States Drywall argues that because Illinois never submitted its Act for approval, it is preempted by OSHA pursuant to section 667(b) according to *Gade*.

■ The doctrine of Federal preemption arises from the supremacy clause of the United States Constitution (U.S. Const., art. VI) and allows for Federal law to preempt State law in various ways. (*Vukadinovich v. Terminal 5 Venture* (N.D. Ill. 1993), 834 F. Supp. 269.) Preemption may be express or implied, and the question centers around congressional intent. (*Kerker v. Elbert* (1994), 261 Ill. App. 3d 924, 634 N.E.2d 482.) "[I]mplied conflict preemption exists when the scheme of federal regulation has not completely displaced state regulation and that state regulation conflicts to a certain extent with federal law." (*Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. at 271.) Accordingly, any State law which conflicts with Federal law deemed proper is void. (*Kerker v. Elbert*, 261 Ill. App. 3d 924, 634 N.E.2d 482.) In any preemption case, the court's ultimate task is to determine whether State regulation is consistent with the structure and the purpose of the statute taken as a whole. *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.

In considering the preemption issue in the present case, it is nec-

essary for us to examine the two acts in order to determine what conflict, if any, exists. (*Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.) We must also look to the purposes behind the statutes in an effort to ascertain the intent of Congress, which is critical to our determination. *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.

Section 1 of the Structural Work Act provides in pertinent part:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1991, ch. 48, par. 60.

Section 9 of the Structural Work Act provides:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***." Ill. Rev. Stat. 1991, ch. 48, par. 69.

The Illinois Supreme Court has held that the purpose of the Structural Work Act is to prevent accidents before they occur and, failing that, to compensate those injured by extrahazardous activities which are socially useful. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 459, 473 N.E.2d 946.) Judicial interpretation of the Structural Work Act excludes the injured party's own negligence from the "negligence equation," unlike common law negligence claims. (*Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. at 272.) This is consistent with the Act's purpose of affording an employee a safe and healthy workplace and giving complete relief to an injured worker. (*Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.) Also, in order to insure compliance with the Act, courts interpret broadly the language "having charge of" to include any owner, contractor, subcontractor, foreman or one who may actually be in charge of work at the site. *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.

While the States traditionally exercised control over the area of safe and healthy working environments, Congress, through OSHA, attempted to "assure so far as possible every working man and

woman in the Nation safe and healthful working conditions." (29 U.S.C. § 651(b) (1988); *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.) OSHA established mandatory occupational safety and health standards which were applicable to all businesses affecting interstate commerce. (29 U.S.C. § 651(b)(3) (1988); *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.) Congress gave the Secretary of Labor the authority to set these standards for the workplace and to insure compliance with those standards by imposing civil and criminal sanctions for their violation. (See 29 U.S.C. § 651(b)(3) (1988); *People v. Chicago Magnet Wire Corp.* (1989), 126 Ill. 2d 356, 534 N.E.2d 962.) OSHA's comprehensive regulations encompass all areas of employment and workplace safety, including the construction workplace. Congress expressly preserved, however, two areas from Federal preemption. *Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.

Section 653(b)(4), which is known as the employer/employee "savings" clause, provides:

> "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4) (1988).

Section 667(a) provides:

> "Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title." (29 U.S.C. § 667(a) (1988).)

Additionally, in section 667(b), Congress gave States the option of preempting Federal legislation entirely. (*Vukadinovich v. Terminal 5 Venture*, 834 F. Supp. 269.) Section 667(b) states:

> "Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement." 29 U.S.C. § 667(b) (1988).

■ The preemption analysis begins with " 'the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " (*Kerker v. Elbert*, 261 Ill. App. 3d at 927, 634 N.E.2d at

485, quoting *Wisconsin Public Intervenor v. Mortier* (1991), 501 U.S. 597, 605, 115 L. Ed. 2d 532, 543, 111 S. Ct. 2476, 2482.) The presumption is that Congress did not intend to preempt State law. (*Kerker v. Elbert*, 261 Ill. App. 3d 924, 634 N.E.2d 482.) This presumption provides assurance that the " 'Federal-State balance' " will not be displaced unintentionally by Congress or unnecessarily by the courts. *Kerker v. Elbert*, 261 Ill. App. 3d at 927, 634 N.E.2d at 485, quoting *Gade*, 505 U.S. at 116, 120 L. Ed. 2d at 96, 112 S. Ct. at 2392.

Section 654(a)(1) of OSHA requires that "[e]ach employer *** furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." (29 U.S.C. § 654(a)(1) (1988).) Section 659 provides for the imposition of civil penalties payable to the Federal government where OSHA and the rules and regulations under it have been violated (29 U.S.C. § 659 (1988)), while section 662 provides injunctive relief to the Secretary of Labor for such violations. (29 U.S.C. § 662 (1988).) We view it as significant in determining preemption that OSHA makes no provision for the awarding of monetary damages to those injured by those violations. (*Kerker v. Elbert*, 261 Ill. App. 3d 924, 634 N.E.2d 482.) Furthermore, "OSHA does not create duties owed by employers to mere invitees upon the premises of employers." *Kerker v. Elbert*, 261 Ill. App. 3d at 928, 634 N.E.2d at 485.

In contradistinction to OSHA, section 1 of the Structural Work Act provides protection from various mechanical contrivances "use[d] in the erection, repairing, alteration, removal or painting of" various structures to "any person or persons employed or engaged thereon, or *passing under or by the same.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 48, par. 60.) Therefore, under the Structural Work Act, "duties are imposed to protect invitees who happen to be on premises where covered activity occurs even though the invitees are not employees." (*Kerker v. Elbert*, 261 Ill. App. 3d at 928, 634 N.E.2d at 485.) Moreover, the Structural Work Act's section 9 makes any owner, contractor, subcontractor, foreman or other person in charge of the work guilty of a misdemeanor for noncompliance with the Structural Work Act and liable for monetary damage to parties injured thereby. (Ill. Rev. Stat. 1991, ch. 48, par. 69.) "Under the broad coverage of section 9, unpaid volunteers injured while performing work for the benefit of others have been permitted to sue for damages for such wilful violations." *Kerker v. Elbert*, 261 Ill. App. 3d at 928, 634 N.E.2d at 485.

As stated earlier, States Drywall asserts that OSHA contains

comprehensive regulations which are applicable to the Davis incident. We disagree.

Because States Drywall relies so heavily on the *Gade* analysis, it is necessary for us to examine the scope of that decision. In *Gade*, the Supreme Court addressed the issue of Federal preemption in the context of the relationship between OSHA's standards for hazardous waste operations and two subsequent Illinois acts which attempted to regulate the handling of hazardous waste through the licensing and training of workers at certain hazardous waste facilities. The stated purpose of the licensing acts was both "to promote job safety" and "to protect life, limb and property." (*Gade*, 505 U.S. at 91, 120 L. Ed. 2d at 80, 112 S. Ct. at 2379.) The *Gade* Court found that OSHA preempted the "dual impact" statutes, which protected both workers and the general public. The Court held that "[OSHA] does not foreclose a State from enacting its own laws to advance the goal of worker safety, but it does restrict the ways in which it can do so. If a State wishes to regulate an issue of worker safety for which a Federal standard is in effect, its only option is to obtain the prior approval of the Secretary of Labor ***." (*Gade*, 505 U.S. at 103-04, 120 L. Ed. 2d at 87-88, 112 S. Ct. at 2386.) Thus, the Court held that State regulation of certain occupational safety and health issues which had not been approved by the Secretary of Labor and for which a Federal standard is in effect is impliedly preempted as being in conflict with the full purposes and objectives of OSHA. (*Gade*, 505 U.S. 88, 120 L. Ed. 2d 73, 112 S. Ct. 2374.) The *Gade* Court also stated that the appropriate standard to be applied when conducting an OSHA preemption analysis is that OSHA preempts all State law that " 'constitutes, in a direct, clear and substantial way, regulation of worker health and safety.' " (*Gade*, 505 U.S. at 107, 120 L. Ed. 2d at 90, 112 S. Ct. at 2387, quoting *National Solid Wastes Management Association v. Killian* (7th Cir. 1990), 918 F.2d 671, 679.) In addition, regarding the preemption of such State laws, it held that "[t]he key question is thus at what point the state regulation sufficiently interferes with Federal regulation that it should be deemed pre-empted under [OSHA]." *Gade*, 505 U.S. at 107, 120 L. Ed. 2d at 90, 112 S. Ct. at 2387.

■ We find that the present case is distinguishable from *Gade* and that the distinction centers around the nature of the statutes at issue. (*Adami v. Green Giant Division, a Division of Pillsbury Co.* (N.D. Ill. 1994), 849 F. Supp. 615, 616.) Section 1 of the Structural Work Act, the provision under which Davis brought her claim, is remedial in nature, as its express purpose includes compensating those workers who have been injured by extrahazardous but socially useful activities. (*Adami v. Green Giant Division, a Division of Pillsbury*

*Co.*, 849 F. Supp. 615.) In contrast, OSHA's purpose is to provide "every working man and woman in the Nation safe and healthful working conditions." (29 U.S.C. § 651(b) (1988); *Adami*, 849 F. Supp. at 616.) OSHA accomplishes its goal by regulating the workplace and enforcing such regulation through the imposition of fines and criminal action. (*Adami*, 849 F. Supp. 615.) OSHA is purely a regulatory provision with no private remedial cause of action. (*Adami*, 849 F. Supp. 615.) Likewise, the Illinois statutes found to be preempted by OSHA in *Gade* were also regulatory in nature in that they involved licensing and training. (*Adami*, 849 F. Supp. 615.) As such, they are distinguishable from the Structural Work Act, the purpose of which, in part, is to provide a remedy for injured workers. *Adami*, 849 F. Supp. 615.

The Structural Work Act is further distinguishable from OSHA in that an injured worker may bring his claim for injury, resulting from unsafe conditions existing in and around scaffolds or other mechanical contrivances against those "in charge of" the work at the site. The worker is not limited to bringing an action against an employer found to be in violation of the regulations as mandated by OSHA. Thus, while States Drywall argues that given Congress' intent to subject employers and employees to only one set of regulations, the *Gade* Court rejected the petitioner's argument that OSHA did not preempt nonconflicting State laws where those laws, like the Act, were designed to promote worker safety, we note that laws governing the care and conduct of third parties (*i.e.*, owners, general contractors and others having charge of construction-related activities) were not addressed in *Gade*.

Such major differences show that the Structural Work Act does not constitute in a direct, clear and substantial way the regulation of worker health and safety. It does not fit the appropriate standard for an OSHA preemption analysis. Therefore, while the goals of OSHA and the Structural Work Act in providing a safe working environment may at times overlap, that fact alone will not render the Structural Work Act unenforceable, where the Act does not interfere or conflict with OSHA. In fact, the *Gade* Court held that "state laws of general applicability (such as laws regarding traffic safety or fire safety) that do not conflict with OSHA standards and that regulate the conduct of workers and non-workers alike would generally not be preempted." (*Gade*, 505 U.S. at 107, 120 L. Ed. 2d at 90, 112 S. Ct. at 2387-88.) Thus, the viability of a cause of action brought pursuant to such a "dual impact" State law which may overlap, but not conflict with, OSHA's domain is not foreclosed. The Structural Work Act, having broad application, is such a State law. We note with regard to

States Drywall's assertion that the Structural Work Act is not a law of general applicability, that "[a]ttempting to differentiate *** general areas of law from the more specific results in an exercise of splitting hairs and fails to address the intent of Congress in enacting these pieces of legislation." *Vukadinovich*, 834 F. Supp. at 274.

Absent any clear expressions to the contrary, it is difficult to imagine that Congress intended to preempt the rights of recovery under the Structural Work Act, a State law where construction activities have traditionally been governed by State law. Rather, we find that OSHA and the Structural Work Act augment each other, enhancing the protection offered to workers, and believe that the intentions of Congress and the Illinois legislature would be defeated if OSHA were found to preempt the Structural Work Act.

Moreover, section 653(b)(4), OSHA's savings clause, expressly preserves State claims brought pursuant to the Structural Work Act. The savings clause states in pertinent part that the statute is not to be "construed to supersede or in any manner affect any workmen's compensation law or *** statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." (29 U.S.C. § 653(b)(4) (1988); *Adami*, 849 F. Supp. 615.) Where it has been held that " '[t]here exists a solid consensus among the courts *** that [s]ection 653(b)(4) is a broad savings clause encompassing state tort claims,' " this provision has been interpreted as independently exempting the Structural Work Act from preemption. (*Adami*, 814 F. Supp. at 617, quoting *Startz v. Tom Martin Construction Co.* (N.D. Ill. 1993), 823 F. Supp. 501, 505.) While it appears Congress intended to extinguish all nonconforming State regulation, we believe it intended to preserve causes of action brought pursuant to the Act, which imparts a statutory right to an injured worker.

Thus, were we to have found that OSHA regulations did apply here where the Structural Work Act has not been approved by the Secretary of Labor (*Vukadinovich*, 834 F. Supp. 269; *Startz*, 823 F. Supp. 501), the Act would nevertheless have been saved from Federal preemption by section 653(b)(4). Moreover, given the presumption against Federal preemption, we find that any tension which may exist between OSHA and the Structural Work Act given the circumstances of this case does not rise to the level of a conflict sufficient to constitute preemption here. Such tension was expressly allowed for in the savings clause. (*Vukadinovich*, 834 F. Supp. 269.) Absent preemption by OSHA, Davis would have had a cause of action under the Structural Work Act against States Drywall, which was in charge

of the work at the site, for injuries which were proximately caused by its wilful violation of the Structural Work Act. In turn, contribution plaintiffs had a viable cause of action against States Drywall for contribution.

States Drywall next contends that the trial court erred when it denied its motion for directed verdict where contribution plaintiffs failed to establish a *prima facie* case for contribution during their cases in chief. It further contends that the trial court abused its discretion when it allowed contribution plaintiffs to reopen their cases for the purpose of supplying the essential elements they refused to introduce into evidence earlier. We disagree.

■ Generally, the decision to reopen a case to allow for the introduction of additional evidence rests within the sound discretion of the trial court. (*A-Tech Computer Services, Inc. v. Soo Hoo* (1993), 254 Ill. App. 3d 392, 627 N.E.2d 21.) The trial court's decision will not be disturbed by a reviewing court absent an abuse of discretion. *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 627 N.E.2d 21.

In deciding whether to allow a party to reopen a case, a trial court should take into consideration such factors as "whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the new evidence is of the utmost importance to the movant's case, and whether any cogent reasons exist to justify denying the request." *A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d at 402-03, 627 N.E.2d at 28.

The record reveals that during the jury instruction conference in the present case after the parties had rested, contribution plaintiffs, having reconsidered their position, represented to the court that they had been persuaded by *Victory Memorial Hospital Association v. Schmidt, Garden & Erickson* (1987), 158 Ill. App. 3d 931, 511 N.E.2d 953, the case upon which States Drywall relied when it argued that an essential element of a *prima facie* case for contribution is the allocation of the settlement amount among the defendants. Consequently, contribution plaintiffs recognized their obligation in this case to allocate the settlement amount between them and accordingly asked the court for leave to reopen their cases for that sole purpose. Over States Drywall's objections, the trial court allowed contribution plaintiffs to reopen their cases, whereupon Portrait Homes and Pasquinelli Construction put on the record that 50% of the joint settlement amount of $650,000 or $325,000 was attributable to each of them. The court then found that the allocation was reasonable and made in good faith.

■ Under these circumstances, we do not find that the trial court abused its discretion in allowing contribution plaintiffs to reopen their cases for the limited purpose of introducing evidence of the allocation of the settlement proceeds between them. The information, which was not made available to the jury, was solely for the court's own use in computing the amounts States Drywall owed to Portrait Homes and Pasquinelli, individually, based on the liability percentages determined by the jury on that same date.

While contribution plaintiffs' failure to introduce the new evidence was not due to inadvertence, it does also not appear to have been due to calculated risk, where during their cases in chief contribution plaintiffs did not believe such evidence was essential to making out a *prima facie* case. Rather, after having considered and having been persuaded by States Drywall's argument based on *Victory Memorial Hospital Association v. Schmidt, Garden & Erickson* that the allocation of the settlement proceeds among the contribution plaintiffs was an essential element of a *prima facie* case for contribution, the contribution plaintiffs concluded that they were obligated to supply such evidence where the evidence was of the utmost importance to their cases for purposes of determining the amounts owed to each of them by States Drywall. Moreover, States Drywall has neither persuasively alleged that it was surprised by the evidence nor offered a basis upon which this court could conclude that it suffered prejudice from the introduction of such evidence where States Drywall itself had argued that such evidence was necessary to establish a *prima facie* case for contribution. The procedure followed insured that no contribution plaintiff would have an advantage should its percentage of responsibility be markedly higher than that of the other contribution plaintiff. The jury determined that the amount of liability attributable to States Drywall for Davis' injuries was 28%. Thus, States Drywall is obligated to pay Portrait Homes and/or Pasquinelli a total of 28% of the jury verdict or $182,000. The jury needed only to determine the percentage of liability or the fault attributable to each party in the contribution action. To have informed the jury of the settlement amount and settlement allocation would have created confusion that could have undermined the certainty as well as the policy supporting a party's good-faith settlement. If a jury were to be informed of the settlement amount and allocation, it could mistakenly award more or less than the amounts reflected by the settlement if it felt that the plaintiff should receive more or less money or that the defendant should pay more or less money. This could lead to a result that is inconsistent with the good-faith settlement which would serve to discourage settlements, generate confusion and produce irrational results.

718

Because we find that contribution plaintiffs' cause of action has not been preempted by OSHA and that they established a *prima facie* case for contribution, the jury verdict is affirmed.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.