[665 NYS2d 773]

CHARLES J. IRWIN et al., Appellants-Respondents, v ST. JOSEPH'S INTERCOMMUNITY HOSPITAL et al., Respondents-Appellants, et al., Third-Party Plaintiffs. GROVE ROOFING Co., INC., Third-Party Defendant-Respondent-Appellant.

Fourth Department, November 19, 1997

## APPEARANCES OF COUNSEL

*Lewis & Lewis, P. C.,* Buffalo *(Allan Lewis* of counsel), for appellants-respondents.

*Charles G. DiPasquale,* Buffalo *(Paul Murak* of counsel), for respondents-appellants.

*Hurwitz & Fine, P. C.,* Buffalo *(Jeffrey Baase* of counsel), for third-party defendant-respondent-appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(M. Patricia Smith* of counsel), intervenor.

## OPINION OF THE COURT

GREEN, J.

At issue on this appeal is whether plaintiffs' cause of action alleging defendants' violation of Labor Law § 241 (6) is preempted by Federal regulation of workplace safety pursuant to the Occupational Safety and Health Act of 1970 (29 USC §§ 651-678 [OSH Act]) and the safety and health standards for the construction industry promulgated thereunder by the Secretary of Labor (29 CFR part 1926). We conclude that Federal regulation of occupational safety and health under the OSH Act does not preempt plaintiffs' Labor Law § 241 (6) cause of action.

Plaintiffs commenced this action to recover damages for injuries sustained by Charles J. Irwin (plaintiff) when he was

transporting hot tar in a device known in the roofing trade as a lugger. At the time of the accident, plaintiff was employed by third-party defendant, Grove Roofing Co., Inc. (Grove Roofing), which had contracted with defendant Ciminelli-Cowper Co., Inc. to install a new roof for defendant and third-party plaintiff St. Joseph's Hospital. The accident occurred when plaintiff fell backward as he pulled the lugger up a plywood ramp, causing the lugger to fall on top of him and spill hot tar on his face, arms and upper torso. As a result of the accident, plaintiff sustained third-degree burns over 40% of his body.

Plaintiffs' Labor Law § 241 (6) cause of action is premised upon defendants' alleged violation of 12 NYCRR 23-1.24 (d), which regulates "[h]ot roofing material transporters, also known as hot luggers." That regulation provides that luggers "shall be equipped with at least the following safety features in order to minimize hazards to persons caused by blowbacks of the molten roofing materials * * * The fill pipe cover shall be provided with a safety latch designed and installed to keep the cover in place at all times except during filling operations" (12 NYCRR 23-1.24 [d] [1] [i], [2] [i]). It is undisputed that the fill pipe of the lugger plaintiff was using was not equipped with a safety latch or a cover. Further, this Court has previously determined that the mandate of that Industrial Code provision is sufficiently concrete to support a Labor Law § 241 (6) cause of action (see, Tallchief v Jemco Roofing, 217 AD2d 915, 917; see generally, Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 502-505).

Plaintiffs moved for partial summary judgment on liability on the Labor Law § 241 (6) cause of action and Grove Roofing cross-moved for summary judgment dismissing that cause of action on the ground that it is preempted by Federal law. Supreme Court denied the motion and cross motion. We affirm.

### PREEMPTION UNDER THE OSH ACT

Grove Roofing, joined by defendants, contends that the Industrial Code regulations that establish and define the duties imposed by Labor Law § 241 (6) have been preempted by the Federal scheme for regulation of workplace safety under the OSH Act. As a consequence, Grove Roofing submits, a civil damage action pursuant to Labor Law § 241 (6), premised upon violation of those preempted regulations, cannot be maintained.

Because "the 'purpose of Congress is the ultimate touchstone' of preemption analysis" (City of New York v Job-Lot Pushcart, 88 NY2d 163, 167, cert denied sub nom. Ja-Ru v City of New

*York,* — US —, 117 S Ct 186, quoting *Retail Clerks v Schermerhorn,* 375 US 96, 103), we must determine whether Congress, in enacting the OSH Act, intended to preempt an action for damages under Labor Law § 241 (6). In making that determination, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (*Rice v Santa Fe El. Corp.,* 331 US 218, 230; *cf., City of New York v Job-Lot Pushcart, supra,* at 166). The presumption against preemption applies in the instant case because the regulation of health and safety, in and out of the workplace, has historically been the province of the States (*see, Gade v National Solid Wastes Mgt. Assn.,* 505 US 88, 96; *City of New York v Job-Lot Pushcart, supra,* at 166).

Congress declared that its purpose in bringing Federal regulation into this area traditionally occupied by the States was "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions" (29 USC § 651 [b]; *see, People v Pymm,* 76 NY2d 511, 517, *cert denied* 498 US 1085). Federal regulation of workplace safety, however, "was not intended to be all encompassing" (*Gade v National Solid Wastes Mgt. Assn., supra,* at 96). Rather, the OSH Act expressly contemplates that the States will continue to play a significant role in furthering the Act's overriding goal of workplace health and safety (*see generally,* Drummonds, *The Sister Sovereign States: Preemption and the Second Twentieth Century Revolution in the Law of the American Workplace,* 62 Fordham L Rev 469, 493-496, 552-555). Under the OSH Act, that goal is to be accomplished, in part, "by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws" (29 USC § 651 [b] [11]).

In addition to making that general declaration of State responsibility within the Federal scheme, Congress expressly saved two areas of State law from preemption (*see, Gade v National Solid Wastes Mgt. Assn., supra,* at 96-97). In our view, the Industrial Code provision at issue in this action falls into the first area and plaintiffs' Labor Law § 241 (6) cause of action is encompassed by the second.

## SECTION 18

Section 18 (a) of the OSH Act provides: "Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or

health issue with respect to which no standard is in effect under section 655 of this title" (29 USC § 667 [a]).

The OSH Act defines "occupational safety and health standard" as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment" (29 USC § 652 [8]). Thus, State regulation of occupational safety and health is preempted to the extent that it addresses issues that are covered by a Federal standard promulgated by the Secretary of Labor pursuant to 29 USC § 655 (see, Gade v Solid Wastes Mgt. Assn., supra, at 98-99).

In addition to reserving for State regulation those issues not governed by a Federal standard, Congress provided States the option of completely replacing Federal standards with their own. Section 18 (b) of the OSH Act provides: "Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement" (29 USC § 667 [b]).

Under that section, even those issues with respect to which a Federal standard is in effect may be subject to State regulation so long as the State regulation is pursuant to a plan approved by the Secretary of Labor (see, 29 USC § 667 [c]; Gade v National Solid Wastes Mgt. Assn., supra, at 103-104). In 1973, New York submitted a plan that received the Secretary's approval, but the plan was withdrawn two years later (see, Berardi v Getty Ref. & Mktg. Co., 107 Misc 2d 451, 457; see also, People v Rosen & Sons, 79 Misc 2d 328, 330). Thus, New York is not presently among the States opting for " 'reverse preemption' " of Federal standards through the development and implementation of an approved State plan (Donovan v Beloit Corp., 275 Ill App 3d 25, 28, 655 NE2d 313, 314; Drummonds, The Sister Sovereign States, op cit., at 495, 553).

Grove Roofing contends that sections 18 (a) and (b) of the OSH Act impliedly preempt Industrial Code regulations adopted pursuant to the authorization of Labor Law § 241 (6) because those State regulations address issues of worker safety for which Federal standards are in effect and, further, that New York may only supplant the Federal standards pursuant to an approved State plan. In support of that contention, Grove

Roofing relies primarily upon *Gade v National Solid Wastes Mgt. Assn. (supra).* Our reading of *Gade* does not support the broad proposition advocated by Grove Roofing, that any State law regulating worker safety and health that is not approved by the Secretary of Labor is impliedly preempted by the OSH Act. In rejecting that broad proposition, we consider the narrow issue before the Supreme Court in that case. In *Gade,* the Court was presented with the question whether certain provisions of Illinois law imposing educational and licensing requirements upon hazardous waste equipment operators and laborers were preempted by the OSH Act. At the time the State legislation was enacted, there were Federal regulations in effect establishing training and certification requirements for workers engaged in hazardous waste operations. Like New York, Illinois had no approved State plan preempting Federal occupational safety and health standards. The Court struck down the Illinois legislation, the plurality holding that "state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act [citation omitted]. The design of the statute persuades us that Congress intended to subject employers and employees to only one set of regulations, be it federal or state, and that the only way a State may regulate an OSHA-regulated occupational safety and health issue is pursuant to an approved state plan that displaces the federal standards" (*Gade v National Solid Wastes Mgt. Assn., supra,* at 98-99).

In *Gade,* there was no question that the State had established "an occupational health and safety standard on an issue for which OSHA ha[d] already promulgated a standard" (*Gade v National Solid Wastes Mgt. Assn., supra,* at 97; *see, Commonwealth v College Pro Painters,* 418 Mass 726, 640 NE2d 777 [State regulations governing the licensing of paint riggers preempted because Federal standards squarely addressed the safety issue articulated in those regulations]). No Federal standard, however, regulates the occupational safety issue addressed by 12 NYCRR 23-1.24 (d). While extensive Federal occupational safety regulations have been promulgated for the construction industry (*see,* 29 CFR part 1926), none addresses the potential dangers posed by hot tar in roofing operations. Unlike the courts in *Gade* and *College Pro Painters,* we are not confronted with competing State and Federal regulations. Rather, only State regulation addresses the occupational safety or health issue implicated in the instant action.

We reject Grove Roofing's contention that, because Federal standards exist for the construction industry, State regulation of any aspect of construction is preempted by the OSH Act. That position, in our view, renders meaningless the Act's specific reservation of State jurisdiction over "any occupational safety or health issue with respect to which no [Federal] standard is in effect" (29 USC § 667 [a]). Further, 12 NYCRR 23-1.24 (d) does not merely supplement existing Federal standards on a particular safety issue; it fills a void that would otherwise exist in the absence of State regulation (*cf., Gade v National Solid Wastes Mgt. Assn., supra*, at 103). That, in our view, is precisely the type of regulation Congress intended to save from preemption under section 18 (a).

### SECTION 4 (b) (4)

Even if we were to determine that the regulation at issue is otherwise impliedly preempted by the OSH Act, we conclude that plaintiffs' section 241 (6) cause of action would nevertheless be preserved by virtue of section 4 (b) (4) of the Act. That section provides: "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment" (29 USC § 653 [b] [4]).

We conclude that the OSH Act's savings clause expressly preserves from preemption plaintiffs' right under Labor Law § 241 (6) to seek damages for injuries arising during the course of plaintiff's employment. In so concluding, we join the "clear consensus that Section 653 (b) (4) operates to save state common law and statutory tort claims from pre-emption under OSHA" (*Startz v Martin Constr. Co.*, 823 F Supp 501, 506 [ND Ill]; *see, Pedraza v Shell Oil Co.*, 942 F2d 48, 52 [1st Cir], *cert denied* 502 US 1082; *Adami v Green Giant Div.*, 849 F Supp 615, 617 [ND Ill]; *Vukadinovich v Terminal 5 Venture*, 834 F Supp 269, 273-274; *Natalino v JMB Realty Corp.*, 277 Ill App 3d 270, 660 NE2d 138; *Donovan v Beloit Corp., supra; Davis v States Drywall & Painting*, 268 Ill App 3d 704, 645 NE2d 304; *York v Union Carbide Corp.*, 586 NE2d 861, 866 [Ind App]; *Smith v Western Elec. Co.*, 643 SW2d 10, 14 [Mo App]). We further note that the consensus includes *Berardi v Getty Ref. & Mktg. Co. (supra*, at 455), the only New York decision directly on point, which squarely held that the OSH Act's savings

clause preserved a cause of action pursuant to Labor Law § 241 (6) from preemption.

We reject Grove Roofing's contention that section 241 (6) is not saved from preemption because it is not a self-executing statute like Labor Law § 240 (1), but is dependent upon an outside source, i.e., the Industrial Code, to define "the standard by which a defendant's conduct must be measured" (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523, *rearg denied* 65 NY2d 1054; *see, Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 503; *Long v Forest-Fehlhaber*, 55 NY2d 154, 160, *rearg denied* 56 NY2d 805). The fact that the duty of care imposed upon owners and general contractors under section 241 (6) is defined in terms of the Industrial Code regulations does not take this action outside the protection of the OSH Act's savings clause. That section expressly prevents the Act from affecting *in any manner* the statutory rights of employees *under any law* with respect to injuries arising during the course of employment. Plaintiff's right to a safe workplace is safeguarded by section 241 (6); the fact that the corresponding duties of owners and contractors are defined elsewhere is of no moment.

In our view, moreover, saving the instant action from preemption does not create the potential for "duplicative, and possibly counterproductive, regulation" that concerned the Court in *Gade* (*Gade v National Solid Wastes Mgt. Assn., supra*, at 102). Regulation of workplace safety under the Labor Law and the OSH Act are fundamentally different. Labor Law § 241 (6) is primarily remedial in nature (*see, Davis v States Drywall & Painting, supra*, 268 Ill App 3d, at 714, 645 NE2d, at 310; *Kerker v Elbert*, 261 Ill App 3d 924, 928, 634 NE2d 482, 485; *Adami v Green Giant Div., supra*, at 616). The overriding purpose of the OSH Act, on the other hand, is to prevent workplace injuries; it is "prophylactic in nature" (*Whirlpool Corp. v Marshall*, 445 US 1, 12; *see, People v Pymm, supra*, at 521). The OSH Act accomplishes that purpose, moreover, through a scheme of regulation directed exclusively at the relationship between employers and employees (*see, Pellescki v City of Rochester*, 198 AD2d 762, 763, *lv denied* 83 NY2d 752). Indeed, it is well established that violation of regulations promulgated under the OSH Act does not provide a basis for liability of owners and contractors pursuant to Labor Law § 241 (6) (*see, Williams v White Haven Mem. Park*, 227 AD2d 923; *Fox v Hydro Dev. Group*, 222 AD2d 1124, *lv denied* 88 NY2d 801; *Pellescki v City of Rochester, supra*, at 763). Section 241 (6)

imposes nondelegable duties on owners and contractors to ensure adherence to Industrial Code regulations, not "to monitor the compliance of plaintiff's employer with [the OSH Act]" (*Pelleschi v City of Rochester, supra,* at 763). Such compliance is obtained, moreover, through civil and criminal penalties, not private awards of damages (*see, Kerker v Elbert, supra,* 261 Ill App 3d, at 930, 634 NE2d, at 486; *Adami v Green Giant Div., supra,* at 616). In sum, the OSH Act contemplates that Federal standards will be in place to regulate workplace safety "whether or not an employee is actually injured or killed * * * and existing state statutory and common-law remedies for actual injury and death remain unaffected" (*Atlas Roofing Co. v Occupational Safety Commn.,* 430 US 442, 445).

We recognize that State damage actions premised upon violations of the Industrial Code are regulatory as well as remedial in effect. Section 241 (6) is regulatory in the sense that the threat of liability for damages to an injured worker will compel owners and contractors to ensure compliance with the Industrial Code. In our view, however, "that regulatory consequence was something that Congress was quite willing to accept" (*Silkwood v Kerr-McGee Corp.,* 464 US 238, 256, *reh denied* 465 US 1074). Our reading of the OSH Act, and particularly the language of the savings clause, leads to the conclusion "that Congress intended State law statutory and common-law duties, rights and liabilities to survive, and that Congress was willing to tolerate any tension that resulted" (*People v Pymm, supra,* at 523-524). The court therefore properly denied Grove Roofing's cross motion for summary judgment dismissing the Labor Law § 241 (6) cause of action on the ground that it is preempted by the OSH Act.

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs contend that they are entitled to partial summary judgment on liability on the section 241 (6) cause of action because the proof establishes as a matter of law that defendants violated 12 NYCRR 23-1.24 (d) (2) and that the violation of that regulation proximately caused plaintiff's injuries. We disagree. Violation of that regulation, "even if admitted by defendants, does not establish negligence as a matter of law but is 'merely some evidence to be considered on the question of a defendant's negligence'" (*Schmeer v County of Monroe,* 175 AD2d 633, 633-634, quoting *Zimmer v Chemung County Performing Arts, supra,* at 522). Defendants and Grove Roofing have raised factual issues with respect to the reasonableness of the safety

measures undertaken at the work site *(see, Zimmer v Chemung County Performing Arts, supra,* at 523), and plaintiffs concede the existence of factual issues with respect to the defense of comparative negligence. Under those circumstances, "defendants' liability should be considered and determined simultaneously with the material, and overlapping, issue of whether the plaintiff was also culpable" *(Tann v Herlands,* 224 AD2d 230, 230-231; *see, E. B. Metal & Rubber Indus. v County of Washington,* 102 AD2d 599, 602-603; *Enker v Slattery Constr. Co.,* 34 AD2d 673). Plaintiffs' motion for partial summary judgment on Labor Law § 241 (6) liability, therefore, was properly denied *(see, Drago v New York City Tr. Auth.,* 227 AD2d 372, 373; *Schmeer v County of Monroe, supra; Larabee v Triangle Steel,* 86 AD2d 289, 290-291).

To the extent our decision in *Hamilton v Tam Ceramics* (214 AD2d 951) holds that summary judgment may be granted on Labor Law § 241 (6) when triable issues of fact exist with respect to the plaintiff's comparative negligence, it is no longer to be followed.

Accordingly, the order should be affirmed.

DENMAN, P. J., HAYES, BALIO and FALLON, JJ., concur.

Order unanimously affirmed, without costs.