# Illinois Official Reports

## Appellate Court

---

### *Rigoli v. Manor Care of Oak Lawn (West) IL, LLC,*
### 2019 IL App (1st) 191635

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL A. RIGOLI, as Independent Executor of the Estate of Lucille Therese Rigoli, Deceased, Plaintiff-Appellee, v. MANOR CARE OF OAK LAWN (WEST) IL, LLC, a Delaware Limited Liability Company, d/b/a Manorcare Health Services-Oak Lawn West, and HEARTLAND EMPLOYMENT SERVICES, LLC, an Ohio Limited Liability Company, Defendants-Appellants. |
| District & No. | First District, First Division<br>No. 1-19-1635 |
| Filed | December 16, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-2640; the Hon. Ronald Bartkowicz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James M. Bream and Shana A. O'Grady, of Lowis & Gellen LLP, of Chicago, for appellants.<br><br>Michael W. Rathsack, Daisy Ayllon, and Michael F. Bonamarte IV, all of Chicago, for appellee. |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Justices Hyman and Pierce concurred in the judgment and opinion.

# OPINION

¶ 1     The estate of Lucille Rigoli (Lucille) sued the owners and operators of a nursing home for negligently causing Lucille's wrongful death and suffering before her death. The Cook County circuit court initially granted the defendants' motion to compel arbitration. However, on the estate's motion to reconsider, the court allowed the estate to file the affidavit of a doctor who opined that Lucille likely would not have understood the arbitration agreement she signed. Defendants now appeal from the circuit court's decision to grant the motion to reconsider and deny the motion to compel arbitration. Defendants contest both the decision to allow the belated filing of the doctor's affidavit and the court's reliance on the opinion about Lucille's mental condition from a doctor who never met Lucille. We hold that the court did not abuse its discretion by allowing the late filing of the affidavit, and the court could rely on the expert opinion concerning Lucille's mental condition. Accordingly, we affirm the denial of the motion to compel arbitration.

¶ 2                                 I. BACKGROUND

¶ 3     Lucille Rigoli died on May 10, 2016. The court appointed Michael Rigoli (Michael) to serve as independent executor of her estate. On March 13, 2018, Michael, as executor, filed a complaint against Manor Care of Oak Lawn (West) IL, LLC, and Heartland Employment Services, LLC, alleging that they failed to provide adequate medical care to Lucille and that their failures led her to fall and break her hip on March 15, 2016. The complaint included separate counts against each defendant for wrongful death and for the pain Lucille suffered before her death under the Probate Act of 1975 (755 ILCS 5/27-6 (West 2016) (commonly known as the Survival Act)).

¶ 4     Defendants filed a motion to dismiss the complaint and compel arbitration. They attached to the motion a copy of a "Voluntary Arbitration Agreement" that Lucille signed on January 12, 2016. Michael argued that Lucille lacked the capacity to enter into the agreement. In an order dated November 6, 2018, the circuit court rejected Michael's argument and compelled arbitration of the Survival Act claims, but the court denied the motion to dismiss as to the wrongful death claims. The court stayed proceedings on the wrongful death claims pending arbitration.

¶ 5     Michael filed a motion to reconsider the dismissal of the Survival Act claims. He appended to the motion medical records that included diagnoses of several ailments Lucille suffered and lists of her medications.

¶ 6     At a hearing on the motion to reconsider, the circuit court said:

    "[T]he plaintiff *** in effect is asking the Court to take judicial notice of some medical conditions that are referenced in those documents and come to the conclusion that they establish factually that there's some question about the individual's cognitive deficiencies. ***

* * *

"*** So you're asking the Court to look at those drugs, make a determination that they are mind altering, and I don't think I could do that.

* * *

*** [W]hat I need is some sort of facts or affidavits or testimony admissible at trial to say, 'In my professional opinion looking at the kind of medications this person had she could not have given [consent].' "

¶ 7 The court entered an order dated March 11, 2019, stating:

"The motion of Plaintiff for Reconsider[ation of] the Court's 11/6/18 Order is hereby *** Denied *** in part; the Court will take under advisement the substantive unconscionability argument. Plaintiff granted leave to file any supplemental briefs/affidavits by 3/25/19."

¶ 8 On March 25, 2019, Michael filed an affidavit of Dr. David Seignious, who said he reviewed medical records concerning Lucille's treatment in 2016 and found that when she first came into defendants' care, "she had an active diagnosis of 'cognitive communication deficit.' " Seignious said that on January 12, 2016, the day Lucille signed the arbitration agreement, she took three doses of Hydrocodone-Acetaminophen, which "can have serious side effects, including: confusion, blurred vision, lightheadedness, dizziness, anxiety, and, in some case[s], unusual behaviors." Seignious noted that

"Lucille also received *** Prednisone *** at approximately 8:00 a.m. on January 12, 2016.

*** Prednisone's side effects may affect a patient neurologically and it is commonly reported symptoms include amnesia, dementia (characterized by deficits in memory retention, attention, and overall mental efficiency), dizziness, hallucinations, impaired cognition, among others.

*** Lucille also received *** Flagyl on January 11, 2016 at 10:00 p.m. and on January 12, 2016 at 6:00 a.m., 2:00 p.m., and 10:00 p.m.

*** Flagyl's possible side effects include headaches, dizziness, and confusion.

*** In addition, Lucille was receiving Levothyroxine, Lisinopril, and Metoprolol.

*** Given the number of medications, her overall debilitated medical condition, and her diagnosis of cognitive communication deficit[,] it is unlikely that Lucille would have understood the contents of any legal documents or would have understood the circumstances surrounding her admission."

¶ 9 The court entered an order dated July 12, 2019, granting the motion to reconsider and vacating the order of November 6, 2018. The court explained:

"Plaintiff's Affidavit ('Affidavit') filed on March 25, 2019 ***, albeit tardy, *** serves to cure Plaintiff's original assertions regarding Lucille's mental capacity. Here, Plaintiff's Affidavit asserts that due to her various medications and their corresponding side effects, that Lucille would have been incompetent to give informed consent to the Agreement."

Although the court noted that Michael provided no explanation for the delay in producing the affidavit, the court exercised its discretion to permit Michael to file it as an amendment to the

motion to reconsider. The court also found Seignious competent to testify to the assertions in the affidavit. The court held:

> "Plaintiff's Affidavit is sufficient because affiant, David Seignious, MD ('Affiant') is a person qualified to give trial testimony due to his professional standing. Affiant's medical opinion is based on his personal knowledge. ***
>
> *** The Affiant *** clearly indicates the dates of treatment and treating facilities of the medical records he reviewed, which included the day of Lucille's admission and the day she signed the Agreement. ***
>
>           * * *
>
> *** Defendant[s'] Motion to Dismiss and Compel Arbitration is DENIED, without prejudice."

¶ 10       Defendants now appeal.

¶ 11       II. ANALYSIS

¶ 12       Defendants argue on appeal that the court erred when it allowed Michael to file Dr. Seignious's affidavit and that the affidavit did not meet the requirements of Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013).

¶ 13       A. Jurisdiction

¶ 14       The parties agree that this court has jurisdiction to consider the appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). The circuit court denied the motion to compel arbitration "without prejudice." We find no Illinois authority squarely addressing the issue of whether the dismissal without prejudice of a motion to compel arbitration gives this court jurisdiction to consider the appeal.

¶ 15       Federal courts have addressed the appealability of similar orders. In *Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 610-11 (11th Cir. 2019), the district court denied a motion to compel arbitration without prejudice. The *Griggs* court held that the applicable statute

> "permits an interlocutory appeal from a district-court order denying a petition *** to order arbitration to proceed. [Citation.] By that provision's plain terms, a litigant who moves to compel arbitration may immediately appeal from a denial of that motion. [Citation.]
>
> *** The only issue is whether our authority to immediately review the order denying the motions is affected by the fact that the court denied the motions *without prejudice*. ***
>
> The text of the *** provision establishing our jurisdiction does not distinguish between denials with and without prejudice. [Citation.] The text permits us to review any order denying a petition *** to order arbitration to proceed and an order denying a petition without prejudice can fall within that description; the phrase 'without prejudice' simply permits the moving party to refile the motion again in the future. *** In the order here, the district court denied the motions to compel arbitration on the merits. So there is no reason to exclude this denial without prejudice from immediate appellate review ***." (Emphasis in original and internal quotation marks omitted.) *Griggs*, 775 F. App'x at 610-11.

See also *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 227-28 (3d Cir. 2012).

¶ 16 Rule 307 permits appeals from orders "refusing *** an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). The provision authorizes appeals from orders denying motions to compel arbitration. *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 285 Ill. App. 3d 796, 798-99 (1996). The rule does not distinguish between refusing an injunction with prejudice and without prejudice. The rule applies "regardless of whether the appeal is from a final decision." *Quilloin*, 673 F.3d at 227. Accordingly, we agree with the parties that Rule 307(a)(1) gives this court jurisdiction over the appeal.

¶ 17                                            B. Late Filing

¶ 18 In the order dated March 11, 2019, the circuit court granted Michael leave to file supplemental affidavits in support of the motion to reconsider. "[A] court has discretion to allow supplemental documents to be filed along with a motion for reconsideration." *Greer v. Yellow Cab Co.*, 221 Ill. App. 3d 908, 915 (1991). We will not disturb the circuit court's decision to allow the supplemental filing unless the court abused its discretion. *Davis v. States Drywall & Painting*, 268 Ill. App. 3d 704, 716 (1994). The circuit court dismissed several counts of the complaint before Michael filed the supplemental affidavit. Defendants, citing *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004), compare the procedure to reopening proofs. We agree that the standards applicable to reopening the proofs should also apply to the decision to allow the presentation of new evidence with a motion to reconsider. When a party seeks to reopen proofs after resting his case, the court should consider

> "whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the new evidence is of the utmost importance to the movant's case, and whether any cogent reasons exist to justify denying the request." *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 210 (1995).

See *Stringer*, 351 Ill. App. 3d at 1141.

¶ 19 We find this case similar to *Davis*, 268 Ill. App. 3d 704. In *Davis*, the plaintiff sued Pasquinelli Construction Company (Pasquinelli), and Pasquinelli sued States Drywall and Painting (States Drywall) for contribution. Pasquinelli and another defendant settled the plaintiff's claims against them, and trial continued on Pasquinelli's claim against States Drywall. At the close of Pasquinelli's case-in-chief, States Drywall moved for a directed verdict, arguing that Pasquinelli had not made a *prima facie* case for contribution because it had not presented any evidence of the allocation of the settlement. After all parties rested, Pasquinelli sought to reopen the proofs based on its belated conclusion that States Drywall correctly asserted that Pasquinelli needed to prove the allocation of the settlement to state a claim for contribution. The trial court permitted Pasquinelli to put on the record the allocation of the settlement. States Drywall argued on appeal that the trial court abused its discretion by permitting Pasquinelli to present the additional evidence after resting its case. *Davis*, 268 Ill. App. 3d at 706-08.

¶ 20 The *Davis* court said the following:

> "While contribution plaintiffs' failure to introduce the new evidence was not due to inadvertence, it does also not appear to have been due to calculated risk, where

during their cases in chief contribution plaintiffs did not believe such evidence was essential to making out a *prima facie* case. Rather, after having considered and having been persuaded by States Drywall's argument *** that the allocation of the settlement proceeds among the contribution plaintiffs was an essential element of a *prima facie* case for contribution, the contribution plaintiffs concluded that they were obligated to supply such evidence where the evidence was of the utmost importance to their cases for purposes of determining the amounts owed to each of them by States Drywall. Moreover, States Drywall has neither persuasively alleged that it was surprised by the evidence nor offered a basis upon which this court could conclude that it suffered prejudice from the introduction of such evidence ***." *Davis*, 268 Ill. App. 3d at 717.

¶ 21 The *Davis* court affirmed the trial court's decision to permit Pasquinelli to introduce the new evidence, even though Pasquinelli had access to the evidence before it presented its case-in-chief and failed to present the evidence only because its attorneys did not think they needed the evidence.

¶ 22 Similarly, Michael's attorneys here argued that the medical records, including Lucille's diagnosis of "cognitive communication deficit," sufficiently created an issue of material fact concerning Lucille's capacity to enter into a binding contract. Defendants have not suggested that Michael had any strategic purpose for withholding expert opinion evidence interpreting the medical records. Thus, here, as in *Davis*, the failure to introduce the evidence sooner "was not due to inadvertence, [but] it does also not appear to have been due to calculated risk." *Davis*, 268 Ill. App. 3d at 717. The expert opinion interpreting the medical records was of the utmost importance to Michael's case. Defendants have not argued that the evidence surprised them, and they have not shown any prejudice. They may still rebut the doctor's affidavit with evidence that Lucille remained competent when she signed the arbitration agreement. Following *Davis*, we find that the circuit court did not abuse its discretion when it granted Michael leave to file Seignious's affidavit as a supplement to the motion to reconsider.

¶ 23 C. Rule 191

¶ 24 Next, defendants contend that the circuit court should have granted their motion to strike Seignious's affidavit because that affidavit did not meet the requirements of Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). Defendants argue that Seignious could not testify competently to the assertions he made in the affidavit, as he had no "personal knowledge" of Lucille's mental condition; rather, he relied on "sheer supposition" about the effects of Lucille's medications. We will not reverse the decision to deny the motion to strike the affidavit unless the circuit court abused its discretion. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 18.

¶ 25 An expert may opine on a person's mental condition even if the expert never interviewed the person. *People v. Smith*, 93 Ill. App. 3d 26, 34 (1981); see *People v. Newbury*, 53 Ill. 2d 228, 236 (1972). The Supreme Court of North Carolina examined cases that allowed such opinions into evidence, finding:

"In *State v. Bonney*, 329 N.C. 61, 72-73, 405 S.E.2d 145, 151-52 (1991), a clinical psychiatrist testified that another expert may have incorrectly diagnosed a defendant based on flaws in the expert's interviewing technique and testing. The clinical psychiatrist, in effect, stated that contrary to the beliefs of defendant's expert's opinion,

defendant did not have multiple personalities. The clinical psychiatrist reached this conclusion without actually interviewing the defendant.

In *Barefoot v. Estelle*, 463 U.S. 880, 103 S. Ct. 3383, 77 L.Ed.2d 1090 (1983), the United States Supreme Court rejected the contention that a defendant must be personally interviewed by a psychiatrist before the psychiatrist can testify about defendant's future dangerousness. *** The Court *** held that the fact that experts do not examine defendants goes to the weight of their testimony, not to its admissibility. ***

* * *

While it may be better practice to actually interview a defendant before reaching a decision on his mental capacity, a personal interview is not required by our case law, the case law of the United States Supreme Court, or our Rules of Evidence for an opinion of a psychiatrist to be reliable and admissible. We conclude that the trial court did not err in admitting this expert testimony." (Internal quotation marks omitted.) *State v. Daniels*, 446 S.E.2d 298, 314-15 (N.C. 1994).

¶ 26     Here, Seignious based his opinion on medical records and his knowledge of the side effects of the many medications Lucille ingested within a relatively short time before she signed the arbitration agreement. The circuit court did not abuse its discretion by denying the motion to strike the affidavit.

¶ 27                                              III. CONCLUSION

¶ 28     The circuit court did not abuse its discretion when it permitted Michael to file, belatedly, an expert's affidavit concerning Lucille's mental condition at the time she signed the arbitration agreement. The expert could offer an admissible opinion on Lucille's mental condition in reliance on her medical records, even though he never met Lucille. Accordingly, we affirm the circuit court's order denying the motion to compel arbitration.

¶ 29     Affirmed.